Good morning. Welcome. Thank you so much for coming to the Browning courthouse. We'd like to thank all of our counsel for being here today, but to especially thank our pro bono counsel. So thank you very much. There are a number of cases that were submitted on the briefs. We'll just recognize those at the beginning. Gomez, Guardado v. Blanche was submitted. Espinosa v. Quintero was submitted. And Cooper v. City of Mesa were submitted as well as finally Mamadova v. Blanche. That leaves three cases for oral argument. We'll begin with Arellano Martinez v. Blanche. So if counsel would please come to the podium. I understand you're splitting one opening and then a second student is doing rebuttal. So we'll just set the clock for 10 minutes and then five minutes for the rebuttal. Okay, if you can come forward. And government counsel is remote, so welcome. Thank you, Your Honor. All right, go ahead whenever you're ready. Good morning, Your Honors, and may it please the court. My name is Xiaoyu Zhang, and I'm a law student at Northwestern under the supervision of Professor Daniel Hamilton. Together with my co-counsel, Mr. Johnson, we represent Petitioner Ms. Clementina Arellano Martinez. We'd like to reserve five minutes for rebuttal. Clementina raises three claims on appeal, and the agency has erred in denying each of them. First, the agency made multiple legal errors in finding that her conviction under 18 USC Section 545, importation of merchandise, was a particularly serious crime. Specifically, the BIA here failed to conduct the necessary two-step analysis and ignored key mitigating evidence while relying on speculation. These errors, especially in combination, justify remand. Second, the agency ignored key undisputed evidence supporting her application for cancellation of removal. The record shows that she has clearly accepted responsibility, but the agency overlooked it. Third, the agency overlooked the State Department's country report on Mexico. This is a piece of evidence that this court assigned special weight to, but the agency failed to consider it and give reasoned consideration. For these reasons, we ask that you grant her petition, vacate the decision below, and remand for the BIA with instructions to grant her cat relief. On the first issue, particularly serious crime, there's no dispute that her conviction under 18 USC Section 545 was not an aggravated felony, because aggravated felonies are per se particularly serious. And when it's not per se particularly serious, the agency needs to conduct a case specific two-step analysis. The government agrees in its reply that this two-step analysis is a crucial gatekeeping function. At step one, the agency looks... Let's talk about step two. In step two, the Behr case just says that in considering the second author factors, all reliable information may be considered. And it doesn't say that it must be considered. So why should we find that there was legal error here at step two? At step two, Your Honor, it is correct that the agency may consider all reliable and relevant evidence. However, under this court's President Franco Arias, the agent, the court... That's an unpublished case, right? So it's not actually binding precedent? That is correct. But we still think it is informative here because there the agency similarly found that when the agent, the court similarly found that when the agency omitted to consider evidence probative of their circumstances, it was a legal error. Do we have anything binding, anything published that says that the agency must consider such evidence? Or do we just have Behr saying may? We have Behr's language saying may. And that is correct that at step B, the agency may look at all reliable and relevant evidence. But here, what is crucial is the agency looked at the record and concluded that she did not raise the element duress. That is squarely contrary to what is before us. In the record on pages 951, 952, 959, during the pre-sentence period, it is undisputed that Clementina raised duress multiple times. You would agree that even in Franco Arias, in the section that you're relying on, it doesn't actually cite any law, does it? I don't see any authority either in terms of case or statute. That's correct. In Franco Arias, the agency, this court concluded that the agency omitted to consider evidence probative of the circumstances. In that case, it was the petitioner's own testimony because it was probative of the circumstances underlying the petitioner's conviction. Can I ask you just, you know, the quantity here, you know, a one kilogram drug importation case would be a serious felony. Here, it's what, 8.85 kilos. It's almost 20 pounds of meth. And your client says she successfully imported drugs at least twice. The record's unclear, maybe four times before. Why isn't this serious? I mean, I think any federal criminal case would think one kilo is very serious. So almost nine kilos. Tell me why that's not a particularly serious crime. Two responses to that, Your Honor. First of all, her conviction is not a drug trafficking offense. She was convicted under importation of merchandise, which is not aggravated. Therefore, we expect the agency to engage in this specific two-step analysis under this court's precedent, Mendoza-Garcia, as well as the agency's president, Henry NAM. But the issue with the BIA's decision here in terms of how the agency came to the conclusion that it was particularly serious is riddled with legal errors at step one and step two. At step one, the agency on page 72 of the record only looked at the mens rea element, the IJ listed willing, knowing, or fraudulent. Right after that, there was no consideration of the element importation of merchandise, and there was no consideration for contrary to law. This court's precedent requires that the agency looks at proper evidence and relies on appropriate factors. By doing a scant analysis of a single element in the section 545 conviction, this analysis is incomplete and leaves this court and the parties here in speculation of what the analysis should have looked like. We, in our opening brief, present you with various cases showing that section 545, the term merchandise, could cover a wide-ranging category of items. The agency here just failed to analyze what does merchandise mean, why is it particularly serious, and when this court looks at a scant analysis, as in Delgado, this court says the agency must be clear enough so that we need not speculate based on an incomplete record. What we have here is an incomplete record, at least to step one. Can we move on to the cat merits? Okay. There does seem to be a lot of speculative steps that are necessary to find a valid claim here because your client has never been institutionalized, and her argument depends on these five different steps, that she wouldn't get the care and treatment, it would make her deteriorate such that she would get to the attention of law enforcement, law enforcement would institutionalize her, she'd be abused in an institution, and the government would have the specific intent of inflicting suffering. So that seems like a lot of steps, and at each one we have to say it's more likely than not that that event would happen. So why isn't that an overly speculative claim? Our response to that is first, in evaluating the likelihood of torture that Clementina faces here, the first thing is the agency has to consider relevant evidence and give it reasoned consideration. But more importantly, directly to your question about the potential steps involved in this process, we disagree as to how speculative it is. We think it is not speculative at all, because given this court's precedent, Abandano-Hernandez, when the petitioner is a past victim of abuse, and in this case she is, because the agency has clearly found in this decision that she is a victim of past torture at the hands of her father when she was a child, she was a rape victim, she was a physical abuse victim at the hands of her mother, and she was abused by multiple ex-partners, most recently Sarti, who coerced her into transportation merchandise, transportation of merchandise across the border. As a past victim under Abandano-Hernandez, she is more likely, if we be subject to that abuse. And here we have Clementina, who is fitting that definition. Additionally, her susceptibility to abuse, she wasn't institutionalized when she lived in Mexico, correct? That is correct. She wasn't institutionalized when she lived in the United States. That is correct, because she had access to medication, she was able to travel freely, but as we show from the record, none of these, you know, resources and available methods of, you know, recourse are available to her, and when she returns to the site of her prior suffering without access to anything, she is more likely than not to suffer at the hands, suffer at the acquiescence of government officials if returned to Mexico. Her susceptibility is also supported by the record showing that she displays her symptoms of mental illness outwardly. This is by the testimony of Dr. Glanthorne-Gardinas by the nurse practitioner at the ICE facility, saying that she displays her symptoms and she's likely going to suffer at the hands of people looking to manipulate her. These are all findings that we expect the government, the agency, to grapple with, alongside giving reason, consideration to the country report, which this court assigned special weight to. Here, the government's best response to the lack of consideration... Can I ask you about that State Department report? It looks very minimal, it's like a paragraph, and what the agency did consider is like an eight-page Columbia report, which has way more details, way more information. Why isn't that State Department report cumulative? The State Department report, Your Honor, is crucial here because in this court's precedent, Aguilar-Ramos, it carries special weight. Specifically, in later cases, Kozlowskis and Getachew, this court called the State Department report the most appropriate and best resource for evaluating the political conditions in a country. It is true that the agency here looked at other pieces of evidence contained in the record, such as showing abuses and showing the lack of medical resources, but there are issues with that analysis as well, which is the second sub-argument under a CAT claim, showing that the agency engaged in improper speculation and over-reliance on facially progressive laws. I see my time is up. May I briefly conclude? Very briefly. I'll just end on that, actually. Okay, thank you. Good morning, Your Honors. May it please the Court, Raya Jarawan on behalf of the Respondent, the Attorney General. As the Petitioner's Counsel mentioned, there are three central issues in this case. The Petitioner's application for cancellation of removal, the particularly serious crime determination, and the application for the deferral of removal under the CAT. The Court can dispose of the first issue because this Court lacks jurisdiction to review the denial of cancellation of removal, as it was a purely discretionary determination. Under 8 U.S.C. 1252a2b1, and case precedent issued by this Court and the Supreme Court, the Court cannot review this issue unless the Petitioner raises a question of law or constitutional claim, which the Petitioner has not done here. But you would agree that if we were to find that the agency failed to consider relevant evidence, that would be legal error that would give us jurisdiction, if we were to make that finding? If you were to make a finding that the agency failed to consider either probative material positive or negative equity in this case, that would be one argument, a potential legal error. However, in this case, as evidenced by the voluminous immigration judge's decision and the Board's decision, all the factors required to be considered in this case were considered, both positive and negative. The immigration judge considered both her mental health concerns, her lack of criminal history prior to this arrest, her history of abuse, the history of drug abuse, the fact that she... So, if I understood you correctly, I think your answer was a yes, but you just don't think that happened here. Is that right? I don't believe it happened here. But it is a yes, if we were to find that there was relevant evidence that's not considered, that would be legal error that would give us jurisdiction. That's a yes. I think it would depend on the evidence and depend on the circumstances of a case. But yes, generally, if there is evidence that was wholly not considered, then there is an argument to be made that there is legal error. But in this case, there was no evidence that wasn't considered. Help us kind of work through, on the acceptance of responsibility, how should we treat the fact that the agency didn't consider her plea agreement, which gave her the benefit of acceptance of responsibility, her sentence, her probation office recommendation for sentence, everything seems to have given her the sentencing reduction for acceptance of responsibility. That doesn't appear to have been... It wasn't explicitly considered, but it doesn't appear to have been considered. So, how should we think about that? The immigration judge and the board certainly took into consideration her acceptance of responsibility. It may not have explicitly cited to the pre-sentence report. But certainly, that was a lengthy discussion in both agency decisions. Certainly, the distinction between remorse and taking responsibility was discussed. The presumption is that the agency is considering all of the record evidence. And that pre-sentence report is actually identified as one of the evidentiary exhibits in the first page of the immigration judge's decision. So, the presumption is that it is considered. And the fact that the immigration judge is... It's in, I believe, exhibit three. The fact that the immigration judge is discussing the taking of responsibility, as is the board, reflects that this issue was considered. The pre-sentence report... Can I ask you a question, though? If it was considered, but not considered in the acceptance of responsibility analysis, is that enough? It's enough that the board is taking into consideration facts and circumstances that reflect the positive and negative equities. This would be what the petitioner claims to be a positive equity. And certainly, as the immigration judge being the fact finder, it is within the purview of the immigration judge to consider whether or not this individual took responsibility as she claims. Her claim is that she took full responsibility and she had no other choice but to smuggle drugs. The immigration judge has a different interpretation of those circumstances, which is permissible. And because this is a purely discretionary determination, the immigration judge can have a disagreement with the petitioner's interpretation of events. And this court doesn't have jurisdiction to review the different weighing of those circumstances. So in this case, the immigration judge, while believing that the petitioner herself felt she took full responsibility, the immigration judge interpreted that differently because of her testimony that she had other choices that she could have made. She could have asked her siblings for assistance. She could have remained in the United States, given she was a lawful permanent resident and could have gone back and forth as she was doing between Mexico and the United States. She could have moved her mother to Acapulco to live with her siblings as she was able to. What about the statements on the pre-sentence report that said that she had demonstrated acceptance of responsibility for the offense? She had accepted responsibility by pleading guilty. Those weren't discussed and those seem terribly relevant to the evaluation of whether she did, in fact, accept responsibility. So what do we make of that? The immigration judge, again, the presumption is that the immigration judge considered all the evidence in this case. And the criminal consequences of the petitioner's actions are certainly separate from the immigration judge's administrative agency assessment. So the fact that she pled guilty, which the immigration judge identified and mentioned, that gave her the downward departure on her sentencing. So that was a benefit to her pleading guilty, which the immigration judge identified as a benefit. She received a lower sentence. So that factor actually was considered in the immigration judge's decision and the board's decision. But the criminal consequences and immigration consequences are different. Just because a probation officer comes to a conclusion about an individual taking responsibility and how that affects the sentencing is a separate and distinct analysis from an agency's discretionary weighing of the facts and circumstances of a case. And the immigration judge is not required to adopt the pre-sentence report's findings. I think the immigration judge is required to look at it if it's standard as evidence. That's the question. And the immigration judge, again, the presumption is there. Where do you see a reference in either the BIA or IJ decisions that they looked at the pre-sentence report in the context of acceptance of responsibility? The immigration judge, again, on page 69, identifies all of the exhibits that were listed, including exhibit three, the record of convictions and criminal case documents, which is the exhibit in which the pre-sentence report is found. The immigration judge says on page 70, the court has considered all evidence in the record, whether or not specifically mentioned therein. And the fact, again, that the immigration judge goes to great lengths to discuss taking responsibility, to discuss the downward departure in her sentence, to discuss all the facts surrounding her conviction, indicates that the immigration judge did consider it, but came to a different conclusion than the petitioner came to in regards to her own taking of responsibility. The presumption, according to the Cole decision and Gonzalez-Juarez, is that the agency considered every piece of evidence. It does not mean that the agency must individually identify and discuss every piece of evidence. And in order for the petitioner to rebut the presumption, the petitioner must show that the agency misstated the record or simply ignored potentially dispositive evidence. There's no evidence here that the immigration judge ignored anything. In fact, the immigration judge, again, goes to great lengths to discuss whether or not she took responsibility, whether her testimony reflects that claim. There seems to be a tension between what the petitioner claims is taking full responsibility and what the immigration judge believes is taking full responsibility. And to be clear, the pre-sentence report actually says while petitioner reports she was not paid and only engaged in the instant offense out of duress, there has been no corroborating evidence to back up her claims. So again, the singular focus on the pre-sentence report doesn't necessarily assist the petitioner in this case. But regardless, the immigration judge certainly took it into consideration. And we look at the particularly serious crime since you're down to six minutes. Yes. On step one, why is the agency relying on the maximum sentence and a prior BIA decision that the offense was a crime of moral turpitude? Why is that the equivalent of looking at the elements of the offense? The immigration judge's, the paragraph on page 72 of the immigration judge's decision discusses all the elements but also in addition has a sentence that refers to the maximum sentence of 20 years. I mean, the only element seems to be the mens rea. I don't see any other elements in that discussion. And is that enough just to mention the mens rea? The mens rea is discussed as well as the contrary to the law element. If you look at the Roseman and Robinson citations, Roseman discusses that a defendant who is convicted of this crime must act with knowledge and the Robinson discussion decision discusses that an intent to defraud element of the statute means an intent to avoid and defeat U.S. custom laws. So that's the contrary to law provision that this particular petitioner was convicted under. But where is there any reasoning? It just says respondent statute of conviction requires either a knowing and willing or fraudulent mens rea. 18 U.S.C. 545. Like I just don't see any analysis there or any reasoning. But even with regard to that element, it just seems to be a statement. The immigration judge goes further though and cites to Robinson and explains why the intent to defraud element is important because it means that you are defeating U.S. custom laws and that's the contrary to law provision in the statute. In addition, the board decision is cited but before the citation to that decision, matter of D, the immigration judge says that this is a conviction for smuggling goods. So, quote, smuggling goods refers to the merchandise, which is the other element of this statute. Furthermore, the beginning of the immigration judge's decision on page 71 lays out the entirety, leading into page 72, lays out the entirety of the statutory language. So you have an immigration judge first providing the plain language of the statute, then addressing both the mens rea as well as the contrary to law provision with its citations, indicating that the fact that it's defrauding, that the intent to defraud element is important and highlighting that to its decision about whether this is a particularly serious crime. And then the immigration judge is citing the fact that these are goods that are being smuggled. So the immigration judge is in the step one, which is a very low standard to move to step two, the immigration judge is highlighting all the elements and highlighting why those elements are important. Additionally, the mens rea element is actually the most important one because if you read the, I think it's the Garcia-Paz decision, if I'm not mistaken, the knowing element applies to the importation of merchandise contrary to law. In other words- Do you think at step two, the agency found that petitioner had the intent to distribute meth? The immigration judge did not say that. The immigration judge said that it was, and I will find the exact language. That respondent's conviction involved an intent to surreptitiously import into the United States this dangerous and addictive substance makes it even more grave as it reflects respondent had the intent or at the very least an indifference to spreading to others an inherently dangerous and addictive drug. So the immigration judge is saying, even if we're just discussing her indifference, which is reflected by the fact that she smuggled multiple times prior to the incident in which she was convicted. And she knew that they were drugs according to her testimony, according to the guilty plea. So what the immigration judge is highlighting is there is an indifference to bringing in these drugs into the United States. She testified- But what about what you just read involved an intent to surreptitiously import into the United States? Do you think that is a finding of intent to distribute meth? It's an intent to import. That's the line that I'm highlighting specifically because the statute itself is an intent to import. It's a knowingly, fraudulently or knowingly import- But is it meth or is it some other controlled substance, some other narcotic, unlawful narcotic? Do you mean that- What's the subject or the object of the intent to import? Is it meth or is it- The dangerous and addictive substance, which the immigration judge in step two discusses is meth, is the 20 pounds of meth. So the statute itself requires that an individual knowingly import any merchandise contrary to law. So the knowing element travels through the rest of the statutory language. So that's why the mens rea is actually important. You're not recklessly or negligently doing anything. You are knowingly importing that merchandise contrary to law. And again, the petitioner testified herself that these items were unloaded in the United States. She knew that. She would go to a store and someone else would come and unload the drugs, and then she would go back to Mexico and do it again. So there is an indifference to obviously what is happening. The natural and logical consequences of her actions are such that these drugs would be distributed eventually into the United States. And I see my time is almost up, but I rest on the remaining arguments in my answering brief. All right. Thank you. Thank you. May it please the court. I'd like to begin by going back to the Convention Against Torture claim specifically on the country report. The report is about 25 pages long. It appears in the record at pages 804 to 839. But the only relevant part is like a couple paragraphs, right? It's ER 839 has like two paragraphs about institutionalization of with people with mental disabilities, right? The other stuff is like worker rights. I agree the report is long, but it's talking about other stuff, right? Yes, Your Honor. It's a, you know. Yeah. So the relevant part here about mental disability institutions, that's two paragraphs. And I think the specific legal error that the immigration judge made is in failing not to mention you don't find it that probative. The Ninth Circuit's precedent here requires more than just procedural box checking. But you would agree if it's cumulative of other evidence, that's not legal error, right? Your Honor, the way we read Aguilar Ramos and does Renault. So, you know, the special weight that the country report gets requires, you know, consideration as part of that cumulative evidence. And looking at the agency's decision here, you know, it doesn't appear to have that reason consideration that the court requires in a convention against torture claim. I also, you know, considering the report in light of the evidence shows that the risk of torture here is not that speculative. There's really, I think, no question that Clementina suffers from visible mental illness and that people with visible mental illness face institutionalization in Mexico. And so, you know, the failure to consider that fact undermines the immigration judge's reasoning. Turning to the particularly serious crime issue, at the very first step of Frantescu, it's important that the immigration judge only considered the mens rea in that first step. The, you know, precedents here, the agency's own precedent requires this to be a distinct two-step analysis. Let me ask you some questions about cancellation of removal. If we think that the agency's deciding that the petitioner did not accept responsibility is a purely factual finding, then we don't have jurisdiction. Is that right? Because this is a legal issue. Is this a legal issue for the agency? Your Honor, the ultimate decision is discretionary. That is true. But the legal failure here to grapple with it, the distinction that they made between remorse and acceptance of responsibility is a misapplication of fact to the law, which brings it within your jurisdiction. Now, the, you know, failure to grapple with the acceptance of responsibility makes the agency's conclusion illogical. The, you know, fact that Clementina testified truthfully that she was acting under duress from Sarti, you know, doesn't explain, the immigration judge didn't explain why that's an excuse for her behavior and why that undermined the finding below that she had accepted responsibility for her role in those actions. On the duress defense at trial issue, what's the legal error there? I think the legal error there, Your Honor, is finding that duress could only possibly be raised through asserting it at trial. I think the petitioner's decision to accept a guilty plea in exchange for potentially lenient sentence and those aspects are relevant to that consideration. I know a criminal defendant shouldn't have to go to trial to assert that there are mitigating circumstances involved in their case. And so, the immigration judge saying she waived duress because she accepted responsibility for her role in her crime, I think holds her, forces folks into a really impossible situation. If they're given an option between accepting responsibility and pleading guilty versus risking those immigration consequences down the road. I see my time is about to expire. If there are no further questions, we would ask that the court grant Clementina's petition for review and vacate the decisions below. Let me see if my colleagues have any more questions. Okay, thank you all. Thank you for all counsel's arguments today. They were extremely helpful. Thank you for the excellent arguments.
judges: THOMAS, KOH, THOMAS